STATE OF NEBRASKA, APPELLEE, v. RUDOLPH W. KLATT, APPELLANT.

219 N. W. 2d 761

Filed July 5, 1974. No. 39237.

Paul E. Watts, J. Joseph McQuillan, Gerald E. Moran, and George R. Sornberger, for appellant.

Clarence A. H. Meyer, Attorney General, and Betsy G. Berger, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

This is the second appearance of this case in this court. The defendant, Rudolph Klatt, was originally charged

with murder in the first degree. Before being tried on that charge, however, he was found incompetent to stand trial and spent more than 2 years being treated in the Lincoln State Hospital. Following his release, he was on July 27, 1970, tried on that charge to the court, his counsel prior thereto having stipulated to a waiver of trial by jury, and having filed with the court a document entitled "Waiver of Jury Trial," signed by one of his counsel as permitted by the Nebraska statutes. See § 25-1126, R. R. S. 1943. Defendant was found guilty of murder in the second degree and sentenced to life imprisonment. He appealed that conviction and sentence to this court, which affirmed the judgment of the District Court. See State v. Klatt, 187 Neb. 274, 188 N. W. 2d 821 (1971).

This appeal involves a motion to vacate and set aside his conviction under the Nebraska Post Conviction Act, the defendant alleging as grounds therefor that he was denied effective assistance of counsel and his right to a jury trial. An evidentiary hearing was thereafter held on that motion, and evidence received, following which the District Court denied said motion. Defendant now appeals that ruling to this court.

In this appeal defendant assigns as error that he never knowingly and intelligently waived his constitutional right to a jury trial, and that the trial court erred in denying his motion to vacate and set aside his conviction and sentence. He contends that the trial court did not advise him of his right to a jury trial nor did he personally waive his right to a trial by jury in writing or in open court for the record. He further argues that there was no valid waiver of his right to a jury trial, and that the subsequent trial to the court without a jury constituted reversible error. It is probably true that the trial court did not independently advise the defendant of his constitutional right to a trial by jury, a waiver of said jury trial having previously been filed

with the court by stipulation of defendant's counsel, said waiver being signed by one of defendant's attorneys, as previously stated. The issue to be decided in this case is as to the sufficiency of the procedure adopted to constitute a waiver of defendant's right to a jury trial; and whether defendant's constitutional rights were violated thereby, entitling him to relief under the Nebraska Post Conviction Act.

The United States Supreme Court has thus far refused to impose a hard and fast procedural rule on state courts relative to the waiver of a trial by jury, noting only that: "* * * whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend on the unique circumstances of each case." Adams v. United States ex rel. McCann, 317 U. S. 269, 63 S. Ct. 236, 87 L. Ed. 268, 143 A. L. R. 435 (1942). We have discovered no case, and defendant has suggested none, which would constitutionally require the procedure requested by defendant. A similar procedure to that suggested by defendant has been adopted in the federal courts under Federal Rules of Criminal Procedure, Rule 23 (a), and also some states have statutory provisions requiring that a waiver of jury trial be made in open court in writing signed by the defendant. In Nebraska, however, there presently is neither statutory nor case law delineating the exact requirements for a valid waiver of jury trial. Defendant urges upon the court that we adopt, as the standards for such a waiver, section 1.2 (b) of the ABA Standards Relating to Trial by Jury, which reads as follows: "(b) The court should not accept a waiver unless the defendant, after being advised by the court of his right to trial by jury, personally waives his right to trial by jury, either by writing or in open court for the record." However in the Commentary to the above section the following appears: "Although written waiver is a commendable

procedure, and a necessary one when a record of the proceedings is not maintained, the standard would permit waiver by an oral statement for the record. Such a record, which is deemed adequate when the defendant has waived trial altogether by pleading guilty, will also suffice for waiver of a jury.

"Of course, it does not follow that failure of the court to advise the defendant of his right to jury trial will always require a finding that there has not been an effective waiver of jury trial. Sometimes the sequence of events will sufficiently establish that a voluntary and knowing waiver has occurred."

It is clear from the record that from the very beginning of this case, the defendant was advised and consulted with by all his various attorneys as to his constitutional right to a jury trial, and it further clearly appears that the decision of his counsel to try the case, which involved the defense of "not guilty by reason of insanity," to the court rather than to the jury, was a tactical decision; and that the defendant, although originally objecting thereto, did agree to a trial to the court, and partook in the trial without any objection as to the fact it was not being tried to a jury. Defendant claims in his brief that any conversations of his attorneys with him regarding his constitutional right to a jury trial which preceded the defendant's commitment to the Lincoln State Hospital in 1967 is entitled to no weight whatsoever in determining whether he knowingly and intelligently waived his right to a jury trial. He further claims that it was the duty of his two court-appointed counsel to start ab initio, in late 1969 after he had been released from the Lincoln State Hospital, to ascertain his wishes and consult with him regarding any possible waiver of constitutional rights. Assuming, without deciding, that defendant is correct in that contention, it is clear from the testimony of one of his cocounsel, Thomas L. Anderson, given at the

evidentiary hearing in this matter, that the defendant was indeed apprised of his constitutional right to a jury trial and agreed to waive it. Mr. Anderson testified that the first time he contacted Mr. Klatt was on or about January 2, 1970, and that he had occasion to contact him after that date on many occasions, almost on a daily basis after he was transferred to the Hall County jail. The following verbatim transcript of the questions and answers on this matter is illuminating:

"Q. During your employment by Mr. Klatt, did you discuss with him the right to trial by jury in this case? A. Yes, I did. Q. And do you recall when and maybe how many times you have consulted with him in this regard? A. We discussed that on numerous occasions, practically from the very beginning. At first I was not entirely acquainted with the factual background on the charge pending on Mr. Klatt and at first he was extremely anxious to have his case tried to a Jury and originally we discussed the diffuculties (sic) of handling a fair Jury or a Jury that we felt we could work with in Custer County. As I became more familiar with the case and as I talked with the psychiatrist and the psychologist who were involved in the case it became apparent to me that we had a primary defense of insanity.

"At first in discussing this with Mr. Klatt he was not in favor of this particular defense and still at that time preferred to have his case tried to a Jury on other issues but through the process of almost daily meetings over a period of time I guess I conveyed to Mr. Klatt my optimism of the prospects of being acquitted—being found not guilty by reason of insanity.

"I was confident as I prepared the case that he had an excellent defense, that being the defense of insanity and as we discused the matter and as we discussed how we felt we could prove this case, what we felt the State

could prove and could not prove, he came to agree that this was the proper way to proceed in his defense."

There seems to be no question from a review of the testimony of the evidentiary hearing in the record but that the defendant was, indeed, fully aware of his constitutional right to a jury trial and waived that right, although the actual written waiver was signed by his counsel and not by him personally. That being so, it would seem that the statement contained in the Commentary to section 1.2 (b) of the ABA Standards Relating to Trial by Jury would apply and that the "sequence of events * * * establishes that a voluntary and knowing waiver has occurred" is certainly true in this case. See, also, 47 Am. Jur. 2d, Jury, § 63, p. 681; 21 Am. Jur. 2d, Criminal Law, § 282, p. 314; State v. Jelks, 105 Ariz. 175, 461 P. 2d 473 (1969).

We point out, moreover, that the foregoing standards were not on the date of the trial in question adopted by this court, nor have they to the present date been adopted; but that even if they were to be adopted at some time in the future, they would avail the defendant nothing in this proceeding for the reason that they would not at that time have constituted a violation or a deprivation of his constitutional rights, as required for relief under the Nebraska Post Conviction Act. We also add that as of this date, the procedure set out in section 1.2 (b) of the aforesaid ABA Standards is not constitutionally required.

The action of the District Court in denying defendant's motion to vacate and set aside his conviction was correct, and we affirm.

AFFIRMED.