Charles Henry
**WILLIAMSON, Petitioner,**

v.

**A.L. LOCKHART, Director Arkansas
Department of Correction,
Respondent.**

No. PB–C–84–279.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

May 29, 1986.

Darrell F. Brown, Little Rock, Ark., for petitioner.

Steve Clark, Atty. Gen., Little Rock, Ark., by Theodore Holder, Asst. Atty. Gen., for respondent.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

Currently before the Court is the petition of Charles Henry Williamson (Williamson), an inmate incarcerated at the Cummins Unit of the Arkansas Department of Correction under a life sentence, for a writ of habeas corpus pursuant to Title 28 U.S.C. § 2254 alleging:

1. Petitioner did not waive his right to a jury trial in accordance with ARCrP Rules 37.1 and 37.2. There is no written or otherwise recorded record of petitioner waiving a jury trial. Therefore, petitioner should have been entitled to a jury of his peers as guaranteed by the Arkansas and the United States Constitutions.[1]

2. That petitioner was denied the effective assistance of counsel since counsel made no motion for a severance of defendants and counsel proceeded with a bench trial when petitioner had made no waiver of jury trial on the record or otherwise; nor was any purported waiver knowingly and intelligently made.

3. Further, under the facts and circumstances of this case petitioner has received an excessive sentence of life imprisonment, disproportionate with his conviction of conspiracy to commit capital murder. This sentence constitutes cruel and unusual punishment under the Eighth Amendment to the Constitution and the Arkansas Constitution.

4. Petitioner has, thus, been denied the rights guaranteed to him by the

---

1. Based on petitioner's counsel's oral argument and review of the record, this Court construes the thrust of this claim as petitioner was denied or not afforded a jury trial; and that petitioner did not voluntarily, knowingly and under-standingly waive a jury trial. The Court rejects respondent's argument that Williamson is simply complaining about the manner in which a waiver was manifested.

Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States and Art. 2 §§ 7 and 8 of the Arkansas Constitution.

## I.

Williamson and one Morris were charged, by Felony Information on September 27, 1979, with the criminal offense of conspiring to commit "Capitol Felony Murder". Following a court trial, without a jury, on March 14, 1979, both Williamson and Morrison were found guilty as charged and sentenced to life imprisonment to the Arkansas Department of Correction. The Arkansas Supreme Court affirmed the conviction on November 5, 1979. Williamson was represented in both the Pulaski County Circuit Court and the Arkansas Supreme Court by Attorney William McArthur.

On March 1, 1984, Williamson, by different counsel, Attorney Darrell F. Brown, filed a motion before the Arkansas Supreme Court for permission to seek post conviction relief pursuant to rule 37.2(a) of Arkansas Criminal Procedure asserting that Williamson was tried without a jury and that he did not waive his right to a jury, and that Williamson was entitled to a jury trial as guaranteed by the Constitutions of the State of Arkansas and the United States; that Williamson was denied the effective assistance of counsel since counsel made no motion for a severance of defendants and counsel proceeded with a bench trial when petitioner had not waived jury trial on the record or otherwise; nor was any purported waiver knowingly and intelligently made; the failure of counsel to act in a legally competent manner resulted in making the proceedings a farce and a mockery of justice and should shock the conscience of the Court; petitioner's legal representation was lacking in competence and adequacy and therefore it is the duty of this Court to direct that the sentence imposed be vacated or corrected by the lower court; petitioner has, thus, been denied the rights guaranteed to him by the Sixth and Fourteenth Amendments to the Constitution of the United States and Art. 2 §§ 7 and 8 of the Arkansas Constitution.

On March 13, 1984, respondent filed its response in opposition to Williamson's motion for post-conviction relief contending essentially that Williamson's request was untimely since it was not filed within three years from the date of his conviction; that "Respondent does not perceive the assertions now made by petitioner to be such as to render the judgment of conviction void."

On March 19, 1984, the Arkansas Supreme Court denied Williamson permission to proceed pursuant to Rule 37 without setting forth any reasons therefor.

On June 14, 1984, Williamson filed his petition for writ of habeas corpus in this Court.

On October 16, 1984, an evidentiary hearing was conducted by a Magistrate. On February 7, 1985, the Magistrate submitted his recommended disposition of the case which was the dismissal of Williamson's petition. On February 26, 1985, Williamson filed his objections to the Magistrate's recommended disposition. On January 9, 1986, this Court requested oral argument from counsel relating only to the question whether Williamson had waived his right to a jury trial voluntarily, knowingly and understandingly.[2] During the course of oral argument, respondent conceded that Williamson had exhausted his state court remedies regarding the jury issue, and that the jury issue is properly before this Court.

At the outset, the Court finds that there are no written findings or opinions from any state tribunal of the State of Arkansas regarding the jury question tendered pursuant to Williamson's petition. As previously noted, the Arkansas Supreme Court simply denied Williamson's request to pursue Arkansas's post-conviction procedure without setting forth any reasons for its

**2.** Although Williamson appealed his conviction to the Arkansas Supreme Court and later instituted a Rule 37 post-conviction proceeding, he did not, however, raise the issue of excessive sentence. Consequently, Williamson has not exhausted his state remedies relative to this issue. Thus, this Court will not consider this issue.

action. Respondent argues that because respondent, in opposing Williamson's request for leave to invoke post-conviction remedies was based on "procedural waiver and bar," the Court must conclude that Williamson's request was rejected on procedural grounds, citing *Edwards v. Jones,* 720 F.2d 751, 754 (2nd Cir.1983); *Johnson v. Harris,* 682 F.2d 49 (2nd Cir.1982); *Martinez v. Harris,* 675 F.2d 51 (2nd Cir.1982).

Given the fact that the courts of Arkansas are committed to the view "that the right to jury trial is a constitutional right which is so fundamental that the rule that cures error where counsel fails to object ought not to be readily applied to the denial of rights protected in the Constitution of Arkansas and described therein as 'inviolate.' (Ark.Con. Art. 2, Section 7) Procedural rules governing jury trials are not intended to diminish the right to a jury trial", this Court is not persuaded that respondent's contention has merit. *Bussey v. Bank of Malvern,* 270 Ark. 37, 603 S.W.2d 426 (Ark.App.1980). Moreover, the Arkansas Supreme Court has made it clear that:

"Where a judgment or conviction is void because of the want of due process of law, it has no force and effect, and can be vacated at any time—even after commitment to the penitentiary." *State v. Manees,* 264 Ark. 190, 569 S.W.2d 665, 667 n. 2 (1978), citing *Swagger v. State,* 227 Ark. 45, 296 S.W.2d 204 (1956).

The Sixth Amendment to Federal Constitution provides:

In all criminal prosecutions, the accused *shall* enjoy the right to ... an impartial jury....

The constitutional right of a defendant to a jury trial in a state criminal proceeding is secured under the due process clause of the Fourteenth Amendment to the Federal Constitution. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, *Rogers v. Britton,* 466 F.Supp. 397 (1979).

Although a trial by jury in criminal cases is fundamental and essential to a fair trial, a defendant may waive jury trial providing it is done voluntarily, knowingly and understandingly. *Dranow v. United States,* 325 F.2d 481 (8th Cir.1963). While the prevailing view under federal law appears to be that the waiver need not be in any particular form, the evidence, however, must establish a proper and intelligent waiver. *United States v. McCurdy,* 450 F.2d 282 (9th Cir.1971).

Under Arkansas law, a criminal defendant's right to a jury trial is not only highly cherished, but is secured constitutionally, statutorily, by rule of criminal procedure and case law.

Article 2, § 7, of the Constitution of Arkansas states plainly:

The right of trial by jury shall remain inviolate, and shall extend to all cases at law, ... but a jury trial may be waived by the parties in all cases *in the manner prescribed by law;* ... (Emphasis added)

Rule 31.2 of Arkansas Rules of Criminal Procedure, which became effective on January 1, 1976, pursuant to an order of the Arkansas Supreme Court provides [3]:

Should a defendant desire to waive his right to trial by jury, he must do so personally either *in writing or in open court. A verbatim record of any proceedings* at which a defendant waives his right to trial by jury *shall* be made and preserved. (Emphasis added).

Arkansas' substantive provision, Ark. Stat.Ann. § 43–2108 (1977 Repl.) states:

In all criminal cases, except where the sentence of death may be imposed, trial by a jury may be waived by the defendant, provided the prosecuting attorney gives his assent to such waiver. *Such waiver and the assent thereto shall be made in open court and entered of record.* In the event of such waiver, the trial judge shall pass both upon the law and the facts.[4] (Emphasis added)

In *Johnston v. City of Pine Bluff,* 258 Ark. 346, 525 S.W.2d 76 (1975), the Supreme Court made it abundantly clear that

---

**3.** See Article 1, General Provisions of Arkansas Rules of Criminal Procedure, Ark.Stat.Ann. Title 43 (1977 Repl).

**4.** This section was adopted by the people of Arkansas pursuant to Initiated Measure 1936, Number 3.

even in a misdemeanor case involving a sanction of a $500.00 fine and six months in jail in a Circuit Court appeal where appellant-defendant was denied a jury trial, Arkansas law affords all criminal defendants the right to a jury trial, and any waiver of this right *shall* be made in open court and entered of record citing Ark.Stat.Ann. § 43–2108. The trial court's action to the controversy was reversed and the case was remanded.

In *Bussey v. Bank of Malvern*, 270 Ark. 37, 603 S.W.2d 426 (App.1980), the Arkansas Court of Appeals, in reversing the trial court's action in taking a civil proceeding from the jury where both parties had moved for directed verdicts, at the close of the presentation of evidence by each party, made the following relevant observation which makes clear the high premium that the Arkansas Judiciary places on one's right to a jury trial and what a trial judge must do before a waiver is found:

> We believe that the trial court erred in taking the case away from the jury and that this case should be reversed irrespective of the fact that counsel for appellant failed to object to the error. *We agree with appellants' contention that the right to jury trial is a constitutional right which is so fundamental that the rule that cures error where counsel fails to object ought not to be readily applied to the denial of rights protected in the Constitution of Arkansas and described therein as 'inviolate.' ... Procedural rules governing jury trials are not intended to diminish the right to a jury trial. These rights should be interpreted so as not to give effect to dubious waivers of rights.* (Emphasis added)

In *Moore v. State*, 241 Ark. 335, 407 S.W.2d 744 (1966), the Arkansas Supreme Court found that Moore had waived his right to a jury in his criminal trial, but only after finding that Moore had personally asked the trial judge, in open court, to be tried by the judge, sitting as a jury, and further finding that Ark.Stat.Ann. § 43–

2108 had been followed by the trial judge. The Supreme Court found specifically:

> The case was heard by the court, sitting as a jury, only because of appellant's insistence that this be done.

The trial court record, in the instant proceeding, is completely silent not only with reference to any action taken by the trial court, and the prosecuting attorney regarding any waiver of a jury trial by Williamson, but void absolutely of any request by Williamson or his attorney to waive a jury trial, aside from the failure to cope with the crucial question whether Williamson knowingly, intelligently and voluntarily waived a trial by jury. This deficiency not only fails to comport with the Sixth Amendment to the Federal Constitution as secured to Williamson under the due process clause of the Fourteenth Amendment to the Federal Constitution, but equally as much under the Arkansas standard.

According to docket entries bearing the following dates—April 3rd, June 28th, July 7th, July 10th, July 28th, 1978, January 2nd and March 7th, 1979—Williamson's case was scheduled for a "jury trial" on the following dates:

1. July 14, 1978, by Circuit Judge William Kirby (T. 21, 23, 24).

2. September 15, 1978 by Judge Kirby (T. 26).

3. March 14th and 15th, 1979 (T. 31) by Judge Lowber Hendricks (T. 31, 34).

On March 13, 1979, the following docket entry was made:

> "Case passed to March 22, 1979 for Court Trial." (T. 35)

Significantly, there is no entry on the docket indicating whether Williamson was present and personally waived a jury trial, or whether the entry was made in open court or chambers or some place else.

During the evidentiary hearing conducted by the Magistrate, Williamson testified as follows:

A. The day I walked in the courtroom there was a judge on the bench that I'd never seen before.

Q. Did you have any conference in chambers with Judge Hendricks to your recollection?

A. No, Sir, I never laid eyes on him until the date we walked in the courtroom.

Q. Did you talk with Judge Hendricks or his court to this day?

A. I've never spoke a word to Judge Hendricks or his court to this day.

Q. Did you discuss a waiver of a jury trial with anyone in that courtroom that day?

A. I never discussed a waiver of a jury trial that day or any other day.

Q. Did you waive your right to a jury trial before Judge Hendricks or Judge Kirby or Judge Lofton?

A. I did not.

.     .     .     .     .

Q. And have you at any time in court or out of court waived a jury trial or given anyone authorization to waive your right to a jury trial?

A. I have not.

When asked if he had contacted his relatives concerning the consequences of a waiver before going to trial, Williamson responded:

A. I ... didn't even know I was going to court that date.

.     .     .     .     .

A. Mr. McArthur never at one time talked about a jury trial. The only thing that he kept referring to was we're going in court with Judge Kirby and it would be fast and speedy, and any other way we took, procedures, I'd be drawed out for three or four days.

Q. Did Mr. McArthur discuss with you the fact that a substantial majority or a unanimous verdict would have to be reached by a jury sitting on the facts in this case?

A. No, Sir, he never mentioned the first thing about a jury.

On cross-examination, Williamson testified as follows:

Q. Okay. On the day of your trial you came into the room didn't you?

A. I did.

Q. You saw the judge, didn't you?

A. I saw the judge and didn't know who he was until he was introduced to the court as Judge Lowber Hendricks.

Q. Did you see a jury?

A. I did not.

Q. And at that point didn't you know that apparently you didn't have a jury?

A. That when I asked Mr. McArthur.

Q. So you asked Mr. McArthur that you wanted a jury trial at that time?

A. I did not ask Mr. McArthur if we were going to have a jury or what. He said just hold quiet, this has all been arranged, just be quiet, and I've never spoke one word in that court.

William McArthur, Esq., Williamson's trial counsel, testified:

Q. Did you talk to Charles [Williamson] waiving a jury trial?

A. Yes.

Q. Did that discussion include the other defendant's counsel also?

A. One such discussion did.

Q. Do you recall how many discussions there were?

A. No, I don't. I don't recall the number.

Q. But there were more than one?

A. Yes.

Q. About the waiving the jury trial?

A. Yes.

McArthur testified on cross-examination:

Q. You indicated I think on your direct testimony that Mr. Williamson understood everything that was going on. He understood the options and he understood the reasons. Now, I take it that you don't recollect clearly everything that transpired between you and Charles Williamson

concerning the conversations relative to his right to a trial or his right to be tried by the court?

A. Of course not.

Q. Okay. And in fact, to your knowledge, there is no verbatim record made of any waiver before the trial court concerning Mr. Williamson's right to a jury trial, is that correct?

A. Could you restate that?

Q. You're not aware of any record, verbatim or otherwise, that was before the court that would reflect that Charles Williamson waived his right to a jury trial.

A. If you're saying did the court take a record when we appeared to waive the jury, I have no knowledge of that. I don't know. I have not seen one.

Q. Okay. Now, at the time that you represented Mr. Williamson, were you aware of Arkansas rules of Criminal Procedure 31.2 relative to taking a verbatim record of a waiver of a jury trial?

A. Of course, I'm aware of it.

Q. Okay. And also I would assume, too, that you were aware that the prosecutor would have to consent to the waiver of jury trial at that time?

A. As a matter of fact yes, because they refused to assent for quite sometime even though we had discussions about it.

Q. Do you recall whether or not the assent was given at the time that you appeared in court for the trial or was that assent given by David Williams prior to the day of the trial?

A. The agreement on the part of the state to try the case to the bench rather than to a jury, and the date I can't give you, occurred when it became evident that they were not going to negotiate any sort of plea with us. At the end of that period is when they agreed to try it before the court rather than a jury.

.    .    .    .    .

Q. And I think you said that you can't recall whether or not there was a verbatim record, correct?

A. I have no knowledge that there is one.

Q. You haven't seen one?

A. I have not seen one.

Q. Do you recall whether or not the court at any time inquire Charles Williamson personally whether or not he waived a right to a jury trial.

A. Mr. Brown, I don't recall.       .

Q. Do you recall personally whether any questions were posed by the Court as to whether or not Mr. Charles Williamson personally waived his right to a jury trial.

A. I have no personal recollection of that.

Q. Now, I know I'm asking you to go back a little far here, but do you recall whether or not you waived the jury trial before Judge Kirby or Judge Hendricks?

A. It would have been before Judge Hendricks.

Q. And do you recall whether or not you talked with David Williams concerning that?

A. I know I did prior to the waiver, yes.

Q. Do you recall how many times you appeared before Judge Hendricks?

A. No, I don't.

Q. In fact, I guess it would be safe to say that on the date of the trial that's the first time Mr. Williamson appeared before Judge Hendricks.

A. I don't think so.

David Williams, Esq., Pulaski County Prosecutor, testified:

Q. Do you remember having discussions with Mr. McArthur about possible waiving a jury trial?

A. Yes. The context in which the waiver took place was during one of these times when Mr. McArthur dropped by my office to talk about plea negotiations, and I told Mr. Mc-

Arthur that the only thing that I could do in the way of a plea negotiation or something that might possibly be helpful, I guess would be to waive a jury and I told him that I would agree to waive a jury and allow him to try the case to the court. So that's how the jury waiver and the court trial came about, and then it was set for court trial and that's the way it was tried.

On cross-examination, Williams testified as follows:

Q. Mr. Williams, during the discussions that you had with Mr. McArthur concerning the decision to waive the jury trial Mr. Charles Williamson was not present, was he?

A. No.

Q. Do you recall whether or not at the time of the appearance before Judge Hendricks you stated or Mr. McArthur stated attempts to waive the jury trial at that time? Do you recall?

A. I can't remember. all I could testify to is what I did as a matter of routine.

Q. Do you recall whether or not in 1979 you were required to keep a verbatim record of the waiver of a jury trial by a defendant?

A. No. I recall what we did do in the prosecutor's office. Whenever I would receive a file, the outside of the file would have appropriate places for me to make entries and file decisions were entered on the face of our files....

Williams testified further:

Q. Do you have a written statement showing that Mr. Williamson waived his right to a jury trial?

A. No, I don't have anything in my file like that.

■ After conducting an independent examination of the complete record, including the evidence received during the evidentiary hearing conducted by the Magistrate and the applicable law, the Court finds that the standard in Arkansas for waiver of a jury trial is essentially the same standard required in the federal courts.

It is clear that presuming waiver of right to a jury trial from a silent record is impermissible. The record must demonstrate or evidence disclose that a defendant knowingly, intelligently and understandingly waived his right to a jury trial and anything less is not waiver. *Dranow v. United States*, 325 F.2d 481 (8th Cir.1963), *cert. denied* 376 U.S. 912, 84 S.C. 669, 11 L.Ed.2d 610; *Bussey v. Bank of Malvern*, 270 Ark. 37, 603 S.W.2d 426 (Ark.App. 1980); see also *Boykins v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Cornley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed.2d 1461 (1938).

■ The Court is persuaded and so finds that this record is void of any credible evidence that Williamson knowingly and intelligently waived his right to a jury trial. Moreover, the Court holds that petitioner was never in the posture of being made aware either by the trial court or his attorney, that the choice confronting him was, on the one hand, to be tried by jury of his peers, and on the other hand, to have his guilt or innocence determined by the judge and, as such, petitioner was deprived of sufficient information to make a knowing and intelligent waiver. *United States Ex rel. v. DeRoberts*, 715 F.2d 1174 (7th Cir. 1983). Accordingly, petitioner's conviction, sentence and judgment entered against him are vacated, set aside and held for naught. However, the State of Arkansas will have the option of trying petitioner within ninety (90) days.

IT IS SO ORDERED this 29th day of May, 1986.